## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL FRIEDMAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CASE NO. 08-CV-936-M |
| QUEST ENERGY PARTNERS LP; QUEST ENERGY GP LLC; QUEST RESOURCE CORPORATION; JERRY D. CASH; DAVID E. GROSE; DAVID C. LAWLER; GARY PITTMAN; MARK STANSBERRY; MURRELL, HALL, McINTOSH & CO. PLLP; and EIDE BAILLY LLP, | ) ) ) ) ) ) ) ) | CHIEF JUDGE VICKI MILES-LaGRANGE |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| JAMES JENTS, individually and on behalf of all others similarly situated, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO. 08-CV-968-M |
| QUEST RESOURCE CORPORATION, JERRY CASH, DAVID E. GROSE, and JOHN GARRISON, | ) ) ) ) | CHIEF JUDGE VICKI MILES-LaGRANGE |
| Defendants. | ) ) ) | |

J. STEVEN EMERSON; EMERSON     )
PARTNERS; J. STEVEN EMERSON    )
ROTH IRA; J. STEVEN EMERSON IRA  )
RO II; and EMERSON FAMILY      )
FOUNDATION                    )
                             )  CASE NO.: 5:09-cv-1226M
     Plaintiffs,           )
                             )
vs.                          )
                             )
QUEST RESOURCE CORPORATION,  )
INC.; QUEST ENERGY PARTNERS LP;  )
JERRY CASH; DAVID E. GROSE; and  )
JOHN GARRISON,             )
                             )
     Defendants.

BRISTOL CAPITAL ADVISORS; and  )
BRISTOL INVESTMENT FUND, LTD.,   )
                             )
     Plaintiffs,           )  CASE NO.: CIV-09-932
                             )
vs.                          )
                             )
QUEST RESOURCE CORPORATION,  )
INC.; JERRY CASH; DAVID E. GROSE;  )
and JOHN GARRISON,         )
                             )
     Defendants.         )

JAMES STEPHENS and LUKE RENKEN,    )
Derivatively on Behalf of Nominal                )
Defendants Quest Energy Partners, LP and   )
Quest Resource Corporation,                       )
                                                                    )
      Plaintiffs,                                            )
                                                                    )
vs.                                                                 )    CASE NO.: CIV-08-1025
                                                                    )
GARY PITTMAN; JERRY D. CASH;            )
MARK STANSBERRY; DAVID C.                )
LAWLER; DAVID E. GROSE; JAMES B.     )
KITE; JON H. RATEAU; BOB G.                  )
ALEXANDER; WILLIAM H. DAMON III;  )
JOHN C. GARRISON; N. MALONE               )
MITCHELL III; BRYAN SIMMONS; J.        )
PHILLIP McCORMICK; DOUGLAS             )
BRENT MUELLER; MURRELL, HALL           )
MCINTOSH & CO., PLLP; EIDE BAILLY     )
LLP,                                                                )
                                                                    )
      Defendants,                                          )
                                                                    )
and                                                                 )
                                                                    )
QUEST ENERGY PARTNERS, LP and         )
QUEST RESOURCE CORPORATION,            )
                                                                    )
      Nominal Defendants.                             )

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 2

II.    OVERVIEW OF ALLEGATIONS ...................................................... 5

III.   RELEVANT PROCEDURAL HISTORY ............................................ 6

IV.   ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ................ 11

    A.    Numerosity ................................................................................ 12

    B.    Commonality ............................................................................. 12

    C.    Typicality .................................................................................. 14

    D.    Adequacy .................................................................................. 14

    E.    Common Questions Predominate and the Class Action Is Superior to Other Methods of Adjudication ................................................. 15

        (i)    Common Questions Predominate Over Any Questions Affecting Only Individual Members ................................. 15

        (ii)   The Class Action is Superior to Other Methods of Adjudication .... 16

V.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL ........................................... 18

    A.    Standards for Preliminary Approval ......................................... 18

    B.    Preliminary Fairness Review ..................................................... 19

        (i)    The Negotiations Were Fairly and Honestly Negotiated ................ 19

        (ii)   There Are Serious Questions of Law and Fact about the Outcome of the Litigation ................................................. 20

        (iii)  Counsel Believes that the Settlement Is Fair and Reasonable ......... 21

        (iv)  The Value of an Immediate Recovery Outweighs the Possibility of Relief After Protracted And Expensive Litigation ...................... 22

VI.   THE PROPOSED NOTICE SATISFIES RULE 23 AND DUE PROCESS ......... 23

VII.  PROPOSED SCHEDULE OF EVENTS ............................................. 25

VIII. CONCLUSION ................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) .................................................. 14

*Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997)...................... 11, 14, 15, 17

*APA Exelsior III L.P. v. Premier Techs., Inc.*, 476 F.3d 1261, 1271-75 (11th Cir. 2007) .................................................................................................................. 16

*Ashley v. Reg'l Transp. Dist.*, 2008 LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) . 19, 21

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) .................................................. 16

*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 380 (D. Colo. 1993) ................................ 13

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 947 (10th Cir. 2005)........................................................................................ 24

*Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993) .......... 18

*Devlin v. Scardelleti*, 536 U.S. 1 (2002).......................................................... 22

*Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 190 (D. Kan. 1991) ...................... 13

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974) ............................................... 24

*Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)................................................... 13, 17

*Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993) ................................................... 22

*Harlow v. Sprint Nextel Corp.*, 2008 LEXIS 102965, at *8 (D. Kan. Dec. 10, 2008)...... 13

*In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. 1981).............. 19

*In re Integra Realty Resources, Inc.,* 354 F.3d 1246 (10th Cir. 2004).............................. 24

*In re Intelcom Group Sec. Litig.*, 169 F.R.D. 148–49 (D. Colo. 1996)....................... 14, 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.,* 1997 LEXIS 10835, at *22 (S.D.N.Y. Dec. 31, 1997).......................................................................................... 11

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)............ 18, 21

*In re Ribozyme Pharms., Inc. Sec. Litig.*, 205 F.R.D. 572, 577 (D. Colo. 2001).............. 14

*Jackson v. Capital Bank & Trust Co.,* 1994 WL 118322, at *2 (E.D. La. Mar. 30, 1994) ................................................................................................................ 19

*Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)....................................... 21

*McNamara v. Bre-X Minerals Ltd.,* 214 F.R.D. 424, 430 (E.D. Tex. 2002)..................... 19

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ..................... 24

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 694 (D. Colo. 1998) .................................................................................................................. 15

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)...... 15

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) ............. 18, 22

**Other Authorities**

4 H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) at ¶11.25, p. 38....................................................................................................................... 18

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ......................... 18, 20, 21, 23

*Moore's Federal Practice*, 23.165[3] (3d ed. 2005) .......................................................... 18

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................. 12, 14

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 12, 15

<u>**MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND**</u>
<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

Lead Plaintiffs in *Friedman v. Quest Energy Partners LP, et al.* and *Jents v. Quest Resource Corporation, et al.* and Plaintiffs in *Stephens, et al.  v. Damon, et al.* ("Moving Plaintiffs") submit this Motion for Preliminary Approval of Global Settlement and Memorandum of Law in Support.

**I.      INTRODUCTION**

On July 9, 2010, the parties in the above-styled actions entered into a Stipulation of Settlement (the "Settlement" or "Stipulation"), which was filed with the Court on the same day.   *See Friedman* Litigation Docket no. 202; *Jents* Litigation Docket no. 87; *Emerson* Litigation Docket no. 5; *Bristol* Litigation Docket no. 14; *Stephens* Litigation Docket no. 11 (the *Friedman*, *Jents*, *Emerson*, *Bristol*, and *Stephens* Litigation are each defined below).[1]   Plaintiffs that are parties to the Stipulation are Mark Barretti, Samuel Hyman, Leslie Sundquist, Billy Truitt and Francis Biermeier (the "QELP Plaintiffs Group") in the Quest Energy Partners, LP securities class action, *Friedman v. Quest Energy Partners LP, et al.*, Case No. 08-CV-00936-M ("*Friedman* Litigation"); Plaintiffs Barton Ord, Hakan Ozdenli and Michael Wilson (the "QRCP Plaintiffs Group") in the Quest Resource Corporation securities class action, *Jents v. Quest Resource Corporation, et al.*, Case No. 08-CV-968-M ("Jents Litigation"); Plaintiffs J. Steven Emerson,

---

[1] Attached hereto as Exhibits 1, 2, 3 and 4, which serve to correct and replace Exhibits A, B, C, and D to the Stipulation -- because the Stipulation and the exhibits thereto were filed with the Court prematurely.  Exhibits 1, 2, 3 and 4 are respectively: the Preliminary Approval Order, Notice of the class settlement to be mailed to Class Members, Proof of Claim and Release Form and Summary Notice of class settlement.

Emerson Partners, J. Steven Emerson Roth IRA, J. Steven Emerson IRA RO II, Emerson

Family Foundation ("Emerson Group") in the direct individual action, *Emerson, et al. v.*

*Quest Resource Corp., et al.*, Case No. 09-cv-1226-M ("*Emerson* Litigation"); Plaintiff

Bristol Capital Advisors and Bristol Investment Fund, Ltd. ("Bristol Group") in the direct

individual action, *Bristol Capital Advisors, et al. v. Quest Resource Corporation, Inc., et*

*al.*, Case No. 09-CV-932 ("*Bristol* Litigation"); Plaintiffs James Stephens and Luke

Renken in the derivative action, *Stephens, et al.  v. Damon, et al.*, Case No. 08-CV-1025

(the "*Stephens* Litigation").   All of these cases are pending before this Court (the

"Actions").   Defendants that are parties to the Stipulation are Quest Resource

Corporation ("Quest Resource" or "QRCP"), Quest Energy Partners, LP and Quest

Energy GP LLC (collectively "Quest Energy" or "QELP") (Quest Resource, Quest

Energy and Quest Midstream Partners, L.P. together are "Quest"), Murrell Hall,

McIntosh & Co. PLLP and Eide Bailly LLP (together the "Auditors"), Jerry Cash, David

Grose, John Garrison, John Rateau, Ronnie K. Irani, James Kite, Jr., Malone Mitchell,

Bob Alexander, William H. Damon, III, David Lawler, Gary Pittman, Mark Stansberry

and J. Phillip McCormick (together with Quest and the Auditors, the "Defendants") and

non-party PostRock Energy Corporation ("PostRock" or the "Company"), successor by

merger of Defendants QRCP and QELP[2] (all Plaintiffs and Defendants that are parties to

the Stipulation and PostRock are collectively "Parties").

---

[2] PostRock is a new corporation that now wholly owns Quest Energy, Quest Resource
and Quest Midstream Partners, L.P., pursuant to a recombination transaction (the
"Recombination") approved by each entity's shareholders on March 5, 2010.

Pursuant to the Stipulation, the Moving Plaintiffs request that the Court enter an order: (1) preliminarily certifying the classes in the *Jents* Litigation and the *Freidman* Litigation (collectively, the "Settlement Class") for the purposes of Settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement to the Settlement Class and shareholders of PostRock; and (4) scheduling a Settlement Hearing at which the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds, the Attorneys' Fees and Cost request, and entry of the Final Judgment will be considered.   As detailed herein and in the filed Stipulation, the proposed Settlement consists of $10.1 million in cash, plus the adoption by PostRock of extensive corporate governance reforms. $6.6 million of the Settlement is to be paid by Quest and/or its insurers and $3.5 million is to be paid by the Auditors and/or their insurers.   The $10.1 million fund is proposed to be disbursed as follows:   forty-five percent (45%) or $4,545,000 to the QELP Class and forty-five percent (45%) or $4,545,000 to the QRCP Class (less attorneys' fees,  awards to lead plaintiffs' in the *Jents* Litigation and the *Friedman* Litigation ("Lead Plaintiffs") and to named plaintiffs in the *Stephens* Litigation, expenses, costs and administration fees, all of which will be deducted from the combined ninety percent (90%) before the remainder is distributed to the QELP and QRCP Classes), and ten percent (10%) or $1,100,000 to the Bristol and Emerson Groups.

In preliminarily approving the Settlement, this Court must satisfy itself that the securities class actions may proceed as a class action. Upon satisfying itself that the

4

action may achieve class action status, the Court must then evaluate the form, content and means of notifying the preliminarily-certified Settlement Class of the existence of the action and of the terms of the Settlement.  If the Court is satisfied that the proposed notice to the Settlement Class is satisfactory, the Court must then set deadlines for counsel to disseminate and/or publish the notice, for Settlement Class members to opt-out of the Class, for Settlement Class members to object to the terms of the Settlement and/or for Settlement Class members to file claims and for shareholders of PostRock to object to the terms of the proposed Settlement of the *Stephens* Litigation.  Lastly, the Court must set a date for a final hearing to determine whether it will approve the Settlement as fair, reasonable and adequate.  Thus, at this stage the Court need not engage in a detailed analysis of the fairness of the Settlement, as that is reserved for the hearing on final approval, at which time interested Settlement Class Members, PostRock Shareholders, and counsel for the Parties shall be heard on the matter.

## II.     OVERVIEW OF ALLEGATIONS

The Actions' allegations are centered on accounting fraud committed by QRCP and QELP.  In their operative complaints ("Complaints"), the QRCP Plaintiffs Group, the QELP Plaintiffs Group, the Emerson Group and the Bristol Group allege that throughout the respective class periods Defendants violated the Securities Act and/or the Securities and Exchange Act.

The *Stephens* Litigation alleges that Defendants in the derivative action breached their fiduciary duties owed to QRCP, QELP and their shareholders by, among other things, engaging in the fraudulent scheme alleged in the class action Complaints, thereby

exposing QRCP and QELP to government investigations and regulatory actions, the class actions and direct actions, as well as other damages.

## III. RELEVANT PROCEDURAL HISTORY

The following securities fraud class actions and actions were filed in this Court against Quest Resources, Quest Energy, and certain of their officers and directors and the Auditors:

| Abbreviated Case Name | Case No. | Date Filed |
|---|---|---|
| *Friedman v. Quest Energy Partners, et al.* | 08-CV-936-M | 9/5/2008 |
| *Jents v. Quest Resource Corporation, et al.* | 08-CV-968-M | 9/12/2008 |
| *Bristol Capital Advisors, et al. v. Quest Resource Corporation, et al.* | CIV-09-932-M | 8/24/2009 |
| *J. Steven Emerson, et al. v. Quest Resource Corporation, et al.* | CIV-09-1226-M | 11/3/2009 |

On September 25, 2008 the derivative suit *Stephens, et al. v. Damon, et al.,* Case No. 08-CV-1025-M, was filed on behalf of nominal defendant Quest Resource in this Court, asserting claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment against defendants William H. Damon III, Jerry Cash, David Lawler, David E. Grose, James B. Kite Jr., John C. Garrison and Jon H. Rateau.  An amended complaint was filed in the *Stephens* Litigation on June 8, 2010, adding Luke Renken as Plaintiff and Defendants Gary Pittman, Mark Stansberry, David C. Lawler, Bob G. Alexander, William H. Damon, III, N. Malone Mitchell, III, Bryan Simmons, J. Phillip McCormick, Douglas Brent Mueller,

Murrell, Hall, McIntosh & Co., PLLP, Eide Bailly, LLP, and Quest Energy Partners, L.P. as additional Nominal Defendant.

On September 24, 2009, the Court appointed the QRCP Plaintiffs Group Lead Plaintiffs of the QRCP Class and the QELP Plaintiffs Group Lead Plaintiffs of the QELP Class. The Court also approved the selection of Federman & Sherwood as lead counsel for the QELP Class and the selection of the Rosen Law Firm, P.A. as lead counsel for the QRCP Class.

On November 10, 2009, a consolidated complaint was filed in the *Friedman* Litigation in this Court, on behalf of purchasers of Quest Energy partnership units during the period November 7, 2007 through August 24, 2008, asserting Securities Exchange Act Sections 10(b) and 20(a) claims, and Securities Exchange Act Sections 11 and 15 claims against Quest Energy Partners LP; Quest Energy GP LLC; Quest Resource Corporation; Jerry D.Cash; David E. Grose; David C. Lawler, Gary Pittman; Mark Stansberry; and Murrell, Hall, McIntosh & Co., PLLP and/or Eide Bailly, LLP.

In December 7, 2009, a different class of Plaintiffs filed a consolidated complaint in the *Jents* Litigation in this Court, on behalf of purchasers of Quest Resource stock during the period May 2, 2005 through August 25, 2008, asserting Sections 10(b) and 20(a) claims against Quest Resource, Jerry D. Cash, David E. Grose, John Garrison, Jon H. Rateau, Ronnie K. Irani, James Kite, Jr., Malone Mitchell, Bob G. Alexander, Murrell, Hall, McIntosh, & Co., PLLP, and Eide Bailly, LLP.

On December 28, 2009, Defendants moved to dismiss the Complaints filed in each of the Class Actions. These motions were awaiting further briefing at the time the parties

reached an agreement to settle the cases.  In addition, on April 1, 2010, Plaintiffs in the QELP action filed a motion for partial summary judgment.

The Parties engaged in an extensive mediation process before a nationally-recognized mediator, former U.S. District Court Judge Layn R. Phillips.  The mediation process included all-day settlement conferences on February 4, 2010 and April 2, 2010 (the "Mediation").  At the Mediation, the Parties conducted vigorous arm's length negotiations in an effort to reach a compromise and settlement of the Actions.  Although the February 4 and April 2, 2010 mediation sessions did not result in a settlement, continued efforts by Judge Phillips and the Parties ultimately resulted in a global Settlement of each of the above-referenced Actions, as well as claims between and among various Defendants and their insurance carriers.  Based on their familiarity with the factual and legal issues, the Parties were able to negotiate a fair Settlement, taking into account the costs and risks of continued litigation.  The parties have agreed to a proposed global Settlement of $10.1 million.

The Settlement is a result of extensive and protracted negotiations between the Parties. The negotiations, including the mediation process spanned many months, both in person and by telephone, and during that time counsel for the Parties met repeatedly to discuss the strengths and weaknesses of the class, the direct and the derivative claims, the regulatory situations and financial condition of the Defendants, as well as the complicated and multifaceted issues pertaining to Defendants' insurance coverage. During the mediation proceedings, Defendants provided detailed internal financial information about QRCP and QELP and their ongoing operations and revealed the strong

8

possibility that their insurers would deny coverage of Defendants' liability in the Actions. Defendants further provided internal information about the regulatory regime and investigations that Defendants were operating under and the strict limitations placed on the operation of their businesses by their banks. Moving Plaintiffs' counsel, including attorneys experienced in insurance coverage issues and financing, evaluated the information provided by Defendants and assessed the ability of Defendants, given their precarious financial condition and regulatory constructs, to withstand multiple judgments in these cases. At the end of the mediation process, the Parties arrived at a Settlement, which is now being put before the Court for preliminary approval.

Moving Plaintiffs respectfully submit that the Settlement represents an outstanding result for each Plaintiff and the Classes. The Settlement creates a total cash fund of $10.1 million for Plaintiffs in the Actions and the Settlement Classes, and also requires PostRock, as successor to QRCP and QELP, to adopt important corporate governance changes, which will make PostRock a sounder company going forward.[3] As detailed further herein, PostRock, QRCP and QELP, are in a precarious financial condition with limited assets available to pay into a settlement fund. Among other things, the Company has been negatively impacted by the slumping oil and gas market and has had to renegotiate its bank line of credit, which entailed very difficult negotiations. Moreover, due to the investigations and actions filed by both federal and state regulatory authorities, Quest/PostRock has been funding multiple defense law firms, while its ability to use its

---

[3] Defendants deny Plaintiffs' standing in the derivative actions.

9

credit lines to satisfy a judgment has been severely restricted, leaving it with little to no readily available assets.   Under these circumstances, Moving Plaintiffs respectfully submit that a $10.1 million cash fund of which $9.09 million is reserved for the QRCP and QELP Classes is an exceptional result.[4]

In addition to the cash component, the Settlement provides for PostRock to adopt certain corporate governance policies set forth in detail in the Stipulation and exhibit F thereto.   These corporate governance reforms were agreed to by Defendants as consideration for settlement of the *Stephens* Litigation.

The parties therefore now seek preliminary approval of the Settlement and in connection therewith entry of an Order providing for approval of the form of notice describing the terms of the Settlement; Class Members' and shareholders' rights with respect thereto; the proposed release of claims; the proposed Plan of Allocation of Settlement proceeds to be distributed to Class Members; the request for an award of Attorneys' Fees and Costs to Lead Plaintiffs' Counsel ("Lead Counsel") and Plaintiffs' Counsel in the *Stephens* Litigation; and the procedures for filing Proof of Claim forms. The parties also request that the Court set a date for the hearing to consider final approval of the Settlement and the foregoing matters.   Lastly, as part of the preliminary approval of the Settlement, Moving Plaintiffs also request the appointment of Garden City Group, Inc. ("GCG") as Claims Administrator.    As Claims Administrator, GCG will be

---

[4] As of July 11, 2010, PostRock had a market capitalization of approximately $43.41 million.   Accordingly, the cash to be paid in the proposed Settlement, $10.1 million, is approximately 23.3% of the present market capitalization of PostRock.

responsible for, *inter alia,* mailing the notice to the Classes, publishing Summary Notice, reviewing claims, compiling schedules and reports, and filing tax returns.  GCG has extensive experience in settlement administration and will adequately fulfill its duties in this case.

For purposes of preliminary approval, the issue before the Court is whether the proposed Settlement is within the range of what might be approved as fair, reasonable and adequate in order to justify mailing and publishing notice of the Settlement, and scheduling a final hearing.  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations… and falls within the range of possible approval, preliminary approval should be granted."  *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 1997 LEXIS 10835, at *22 (S.D.N.Y. Dec. 31, 1997).  The Court is not required at this point to make a final determination regarding the reasonableness of the Settlement, and no Class Members' or shareholder's substantive rights will be prejudiced by preliminary approval.

For the reasons set forth herein, Moving Plaintiffs and their respective counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate, and warrants the publication of notice and a final fairness hearing and should be preliminarily approved.

## IV.  ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

In preliminarily approving a proposed settlement, this Court should first consider whether to conditionally certify a settlement class.  *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in

certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions.  One or more members of a class may sue as representative parties on behalf of a class if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  In support of their contention that proper and sufficient grounds for class certification exist under Rule 23(a) and 23(b)(3), the Lead Plaintiffs demonstrate the following:

### A.    Numerosity

The Settlement Class clearly meets Rule 23(a)(1)'s numerosity requirement. Quest Resources and Quest Energy were each publicly traded securities with hundreds, if not thousands, of shareholders during the Class Period.  *See* Complaints (*Jents* Litigation Docket no. 45 and *Freidman* Litigation Docket no. 126) at ¶146 and ¶34, respectively.**Commonality**

The Settlement Class clearly satisfies Rule 23(a)'s commonality requirement and 23(b)(3)'s predominance requirement.  Rule 23(a)(2) requires the existence of common questions of law and fact; however, the rule does not mandate that all questions of law and fact be common to the class. *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 380 (D. Colo. 1993).  Predominance and commonality are met where "there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members… in a single adjudication."  *Harlow v. Sprint Nextel Corp.*, 2008 LEXIS 102965, at *8 (D. Kan. Dec. 10, 2008) (citations and quotations omitted). The Court must compare "the relationship between common and individual questions." *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 190 (D. Kan. 1991).  The "critical test is whether there is material variation in elements like the representations made by defendants to different members of a plaintiff class or the degrees of reliance by members of the class." *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) (holding that common question predominated in Rule 10b-5 securities fraud claims) (internal quotations omitted).

In this case, there are common questions of law and fact pertaining to whether false statements of material fact were made in the financial statements during the Settlement Class Periods, whether the statements were made with the requisite state of mind, whether Settlement Class members were damaged by the statements, and what is the proper measure of damages. Securities fraud actions containing common questions such as those listed above have repeatedly been held to be prime candidates for class

13

certification.  *See*, *e.g.*, *In re Ribozyme Pharms., Inc. Sec. Litig.*, 205 F.R.D. 572, 577 (D.

Colo. 2001).  Thus, here, the commonality requirement is met.

### C.     Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or

defenses of the party or parties representing the class are typical of the claims or defenses

of the other class members.  *See Amchem Products*, 521 U.S. at 625 (common issues test

readily met in securities fraud cases).  The facts surrounding all the claims need not be

identical, but the claims of the class representative and the class must be "based on the

same legal or remedial theory."  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

In the instant matter, the respective Class Representatives' claims are virtually

indistinguishable from those of the Settlement Class members.  Lead Plaintiffs, like all

Settlement Class members, allege that they sustained damage when they purchased the

respective securities at inflated prices during the Settlement Class Periods.  The Class

Representatives' claims and the claims of the Settlement Class arise out of the same

allegedly unlawful conduct by the Defendants, and the proof the Class Representatives

would be required to present in order to establish their claims would also prove the

claims of the Settlement Class members. Federal securities laws are the legal basis for all

Settlement Class members' claims.  *In re Intelcom Group Sec. Litig.*, 169 F.R.D. 148–49

(D. Colo. 1996).  Thus, the typicality requirement is also met.

### D.     Adequacy

The Class Representatives and Lead Counsel will "fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement consists of

14

two components: a) whether the class representatives have no antagonistic or conflicting interests with those of the class; and b) whether class counsel is qualified, experienced, and able to conduct the litigation on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002); *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 694 (D. Colo. 1998).  In its Order appointing Lead Plaintiffs, this Court has already found that the adequacy requirement was preliminarily met. *See* Order dated September 24, 2009 (Friedman Litigation Docket no. 103).  That said, the respective Class Representatives have no interests in conflict with class members and are represented by separate counsel that have vigorously pursued this case and negotiated this Settlement.  Moreover, counsel for the respective classes are well qualified and have significant experience in these types of complex securities litigations. Thus, the adequacy requirement is also met.

### E.  Common Questions Predominate and the Class Action Is Superior to Other Methods of Adjudication

The Class Representatives have also met the requirements of Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual questions and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### (i)  Common Questions Predominate Over Any Questions Affecting Only Individual Members

To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members.  *See Amchem Products*, 521 U.S. at 625 ("predominance is a

test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws").  Here, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every class member were to bring an individual action, each such plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability. As to the Exchange Act fraud claims, reliance is presumed under the fraud-on-the-market theory presumption of reliance. Under that theory, an individual plaintiff need not prove reliance on the alleged misstatement or omission, as it is presumed that the market price of the security reflects all publicly available information about the Company.  *See Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).  Likewise, as to the Securities Act based claims based on QELP's allegedly false registration statement, common questions predominate over individual questions because, should individual actions be brought, every class member would be required to demonstrate that a single document, the registration statement, contained the same false or misleading statements.  Moreover, reliance is not an explicit requirement and is presumed for the Securities Act based claims. *See APA Exelsior III L.P. v. Premier Techs., Inc.*, 476 F.3d 1261, 1271-75 (11th Cir. 2007). Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions.  *Amchem Products*, 521 U.S. at 625. Here, Rule 23(b)(3)'s predominance requirement is easily satisfied.

### (ii)    The Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication.  A class action is superior where it serves the

primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness.  *See Amchem*, 521 U.S. at 615.  "[T]he superiority of class actions in large securities fraud [cases] is well recognized."[5]  *Intelcom*, 169 F.R.D. at 149.  Here, clearly a class action is superior to other available methods.  But for this method of adjudication, there would be hundreds, if not thousands, of individual cases.  *See Esplin*, 402 F.2d at 101 (explaining that an "action on behalf of more than 200 defrauded securities purchasers presents a particularly appropriate situation for a class action").  Moreover, litigating each case individually would force the parties to repeatedly re-litigate the same issues and present the same evidence, and thus, would be "grossly inefficient and wasteful of judicial resources."  *Intelcom*, 169 F.R.D. at 149 (quoting *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 642 (D. Colo. 1986)).  Finally, class certification is the only way to afford relief to the many investors whose claims are simply too small to justify individual suits.

In light of the foregoing, and because Defendants do not dispute that the Settlement Class should be certified solely for the purposes of settlement, the Court should conditionally certify the Settlement Class in accordance with Rule 23(b)(3) and appoint each of the respective proposed Class Representatives as representatives of each respective Settlement Class.

---

[5] The Supreme Court, in *Amchem Products*, held that a district court need not determine the manageability prong of Rule 23(b)(3) to determine whether to certify a class for purposes of settlement only.  521 U.S. at 620.

## V. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A. Standards for Preliminary Approval

Rule 23(e) requires the parties to obtain court approval for any compromise of claims brought on a class basis. Judicial policy favors settlement. *See Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993), *aff'd*, 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlement is desirable"); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). This is especially true in complex securities fraud class actions, where trial is rare and the risk of an adverse verdict is significant. *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007).

Preliminary approval of a class action settlement is the first step that must be taken before the court can consider final approval of the settlement. *See* 4 H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002) at ¶11.25, p. 38. Preliminary approval does not require the Court to answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. Rather, that decision is made only after the final hearing, after notice of the settlement has been given to the class members, and after the class members have had the opportunity to voice their views of the settlement. *See Moore's Federal Practice*, 23.165[3] (3d ed. 2005). At the preliminary approval stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The role of the Court is to examine the materials

submitted and decide whether the settlement appears fair on its face. *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. 1981).

The primary question raised by a request for preliminary approval is whether the proposed settlement is within the range of reasonableness. *See Jackson v. Capital Bank & Trust Co.,* 1994 WL 118322, at *2 (E.D. La. Mar. 30, 1994) ("[T]his Court preliminarily approves of the settlement as being within the range of possible approval . . . "); *McNamara v. Bre-X Minerals Ltd.,* 214 F.R.D. 424, 430 (E.D. Tex. 2002) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing").

Accordingly, at this stage of the settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement is within range of possible final approval.

### B.    Preliminary Fairness Review

### (i)    The Negotiations Were Fairly and Honestly Negotiated

There is no doubt that the Settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, 2008 LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).

19

With the guidance and direct involvement of Judge Phillips, a nationally-recognized mediator and former district court judge in this district, the parties negotiated extensively before reaching an agreement.  Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation and the ability of Defendants to respond to a judgment in a meaningful way.  The negotiations were at all times hard-fought and at arm's length, and have produced a result that the parties believe to be in their respective best interests.   Moreover, the Moving Plaintiffs reached the Settlement only after vigorously contesting the defenses raised by the Defendants before Judge Phillips and thoroughly reviewing and considering the Defendants' defenses, financial condition and insurance coverage.  This, too, militates in favor of approval. Thus, the Settlement was fairly and honestly negotiated, and there is no evidence of collusion.

### (ii)     There Are Serious Questions of Law and Fact about the Outcome of the Litigation

The Moving Plaintiffs have "reasonably conclude[d] that there are serious questions of law and fact that could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation.  *See Lucas*, 234 F.R.D. at 693-94 ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery") (quoting *In re Qwest Int'l, Inc. Sec. Litig.,* 2006 LEXIS 71039, at *16-17 (D. Colo. Sept. 28, 2006))).  Up until the time Moving Plaintiffs achieved the Settlement, those Defendants who were not insolvent or uninsured denied liability on the grounds that the culpable actions were those of merely a few rogue employees.  Defendants thus denied

liability for statements Quest made because they could not be attributed to them.  Those Defendants thus also made a strong challenge to claims of their scienter.  All Defendants also challenged whether Settlement Class members were damaged by the allegedly false statements, and if so, the extent of any such damages.  Such questions of each of the Defendants' scienter and loss causation presented complex issues of proof.  *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007).  Additionally, in securities fraud cases, a favorable jury verdict is not guaranteed. *See id.* (noting that "[p]laintiffs have won only three of eleven [securities fraud] cases to reach verdicts since 1996").  Thus, the unresolved factual and legal issues could have prevented any recovery were it not for the Parties having reached the Settlement.  The Settlement avoids these risks and provides for a substantial cash recovery in a gross amount over $10 million.

### (iii)   Counsel Believes that the Settlement Is Fair and Reasonable

"When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).  Counsels' opinion "is entitled considerable weight" and supports approval of the Settlement. *See Ashley*, 2008 LEXIS 13069, at *21 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006)).  Counsel on all sides of the bargaining table are highly experienced in complex and securities class action litigation.  Defense counsel includes nationally recognized law firms, as well as prominent, local law firms with strong reputations in this type of litigation that proved to be formidable adversaries in these Actions.  Lead

Counsel, Federman & Sherwood and The Rosen Law Firm, P.A., have successfully prosecuted and resolved numerous securities class actions and other complex litigation throughout the country and have a strong reputation in this field. *See* Declarations of Lead Counsel (previously filed as Exhibits 4 and 5 in *Friedman* Litigation Docket no. 36).

### (iv)   The Value of an Immediate Recovery Outweighs the Possibility of Relief After Protracted And Expensive Litigation

The monetary value of the Settlement must be compared to "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), *abrogated on other ground by Devlin v. Scardelleti*, 536 U.S. 1 (2002). The gross Settlement Amount of $10,100,000 in cash is more than sufficient, when weighed against costly and time-consuming and protracted litigation with no guarantee of recovery. That a settlement may represent only a portion of the class-wide damages is irrelevant because "the essence of settlement is compromise." *Wilkerson*, 171 F.R.D. at 284. Additionally, Lead Counsel, who have a great deal of experience in prosecution and resolution of complex class action securities litigation, have separately and carefully evaluated the merits of this case and the proposed Settlement. Even if the matter were to proceed through separate trials, Lead Counsel know from experience that the apparent strength of the Lead Plaintiffs' cases is no guarantee that the Settlement Class would not walk away empty-handed. Furthermore, even if judgments were obtained against the Defendants at trial, and even if the judgments survived the appeals that would likely

follow, the recovery might not be greater, and indeed might be less, than the amount provided by the proposed Settlement.  As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and quotations omitted).

Accordingly, the proposed Settlement has no obvious deficiencies.  The gross settlement provides for payment of $10,100,000 in cash, $9,090,000 of which is allocated to the Settlement Classes, which constitutes a significant recovery for them.

## VI.   THE PROPOSED NOTICE SATISFIES RULE 23 AND DUE PROCESS

Fed. R. Civ. P. 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (quoting *Sallenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417, 436 (D.N.M. 1988)).

The Notice of Pendency and Proposed Settlement of Class Action (the "Notice") attached as Exhibit B to the Stipulation (replaced by Exhibit 1, which is attached hereto) provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history and progress of the Actions; (c) the proposed Settlement; (d) estimated per share recovery to Settlement Class members with and without the requested fees and expenses to be sought by Lead Counsel and Plaintiffs' Counsel in the *Stephens* Litigation; (e) the corporate governance reforms to be implemented by PostRock; (f) the process for filing a proof of claim; (g) a description of the Plan of Allocation; (h) the fees and expenses to be sought

23

by Lead Counsel and Plaintiffs' Counsel in the *Stephens* Litigation; and (i) the date of the Settlement Hearing.

The proposed Order for preliminary approval of the Settlement mandates that within fifteen (15) days of the Court's order preliminarily approving the Settlement, Lead Counsel shall provide notice to Settlement Class members and those who are common shareholders of PostRock through mailing of the proposed Notice to all identifiable Settlement Class members and common shareholders of PostRock.  Likewise, within seven (7) days of the mailing of the Notice by Lead Counsel to Settlement Class Members and common shareholders of PostRock, Lead Counsel shall cause a Summary Notice, substantially in the form annexed as Exhibit D to the Stipulation (replaced by Exhibit 3, which is attached hereto), to be published once in the *Wall Street Journal*, and shall cause a copy of the Summary Notice to be published electronically on *PR Newswire*.

The proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Thus, the proposed method of notice described above satisfies the requirements of due process. *See Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974); *see*, *e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 947 (10th Cir. 2005); *In re Integra Realty Resources, Inc.,* 354 F.3d 1246 (10th Cir. 2004) (finding that notice by publication and mail was sufficient).

24

## VII.   PROPOSED SCHEDULE OF EVENTS

The parties propose the following schedule of events leading to the Settlement Hearing as set forth in the parties' proposed Preliminary Approval Order attached and submitted herewith:

| Event | Time for Compliance |
|---|---|
| Settlement Hearing | Approximately one-hundred days from entry of the Preliminary Approval Order (Order ¶5) |
| Mailing of Notice of Proposed Settlement of Class Action and  Proof of Claim and Release | Fifteen  (15) days after the entry of Order of Preliminary Approval (Order ¶11) |
| Publication of Summary Notice | Seven (7) days after Mailing of the Notice (Order ¶12) |
| Mailing deadline of Objections | Fifteen (15) days prior to the Settlement Hearing (Order ¶20) |
| Mailing  deadline  for  Requests  for Exclusion | Fifteen  (15) days prior to the Settlement Hearing (Order ¶16) |
| Last Date for Filing Proofs of Claim | Fifteen  (15) days prior to the Settlement Hearing (Order ¶24) |

This schedule is similar to those used in numerous class action settlements and provides due process for class members with respect to their rights concerning the Settlement.

## VIII.  CONCLUSION

Counsel for all Parties have reached this Settlement following extensive discussions and arm's-length negotiations.  At this juncture, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable and adequate. For all of the above-stated reasons, Moving Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for the purposes of Settlement; (2) preliminarily approve the

Settlement as set forth in the Stipulation; (3) approve the form and manner of notice of

the Settlement to the Settlement Class; and (4) set a Settlement Hearing date for final

approval of the proposed Settlement.

/s/William B. Federman
William B. Federman, OBA #2853
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Tel:  405.235.1560/Fax: 405.239.2112
wbf@federmanlaw.com

*Counsel for Lead Plaintiffs in Quest Energy
Class: Mark Barretti, Samuel Hyman, Leslie
Sundquist, Billy Truitt, and Francis
Biermeier (the "Barretti Group")*

/s/Laurence M. Rosen
Laurence M. Rosen (*pro hac vice*)
lrosen@rosenlegal.com
Phillip Kim (*pro hac vice*)
pkim@rosenlegal.com
THE ROSEN LAW FIRM, P.A.
350 5th Avenue, Suite 5508
New York, NY 10118
Tel:  212-686-1060/Fax: 212.202.3827

*Counsel for Lead Plaintiffs in Quest
Resource Class: Barton Ord, Hakan Ozdenli,
and Michael Wilson (the "Ord Group")*

 /s/John E. Barbush
John E. Barbush, OBA #17837
j.barbush@coxinet.net
JOHN E. BARBUSH, P.C.
120 N. Robinson, Suite 2700
Oklahoma City, OK  73102
Tel: 405.604.3098/Fax: 405.604.7503

*Counsel for Plaintiff James Stephens and
Luke Renken*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of July, 2010, a true and correct copy of the above and foregoing document was served via CM/ECF to all attorneys registered with the CM/ECF system:

/s/William B. Federman
William B. Federman